UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
WIRELESS TV STUDIOS, INC.,

                Plaintiff,                    **MEMORANDUM & ORDER**

        -against-                     07 CV 5103 (RJD)(RER)


DIGITAL DISPATCH
SYSTEMS, INC.,

                Defendant.
----------------------------------------------------X

DEARIE, Chief Judge.

     In this action alleging copyright infringement of computer display screens and the

programs that create them, plaintiff Wireless TV Studios, Inc., moves for a preliminary

injunction restraining and enjoining defendant Digital Dispatch Systems, Inc., from continuing

the allegedly infringing use of those materials.   The motion is denied.

## DISCUSSION

     On the merits, plaintiff has failed to establish the required likelihood of success or the

existence of sufficiently serious questions because, so far, plaintiff has failed to make a

sufficiently particularized factual showing to warrant the "extraordinary and drastic remedy" that

it seeks. <u>Sussman v. Crawford</u>, 488 F.3d 136, 139-40 (2d Cir. 2007) ("[a]"preliminary injunction

"should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion")

(internal citation omitted) (emphasis in original).   This exacting standard, which places a heavy

burden on the moving party, <u>id.</u>, is not satisfied by the generalized assertions of copyrightability

and creative effort that plaintiff has offered.   The copyrightability of computer programs and

screen displays is not, as both plaintiff and defendant erroneously contend, an all-or-nothing proposition; rather, the express limits on copyright in Section 102(b) of the Copyright Act, 17 U.S.C. §102(b), and in the Second Circuit's filtering test, <u>Computer Associates International, Inc. v. Altai, Inc.</u>, 982 F.2d 693, 706-12 (2d Cir. 1992), require plaintiff to identify, specifically, which aspects or elements of its program or screen display it considers protectable. <u>MiTek Holdings, Inc. v. Arce Eng'g Co.</u>, 89 F.3d 1548, 1554 (11th Cir. 1996) (citing additional authorities). Plaintiff has made no such delineation.

With respect to plaintiff's claim of program infringement, because defendant is using an entirely different code that it wrote itself, in a different programming language, the Court finds no evidence of *literal* infringement (i.e., at the level of the code). <u>Computer Assocs.</u>, 982 F.2d at 702 ("It is now well settled that the literal elements of computer programs, i.e., their source and object codes, are the subject of copyright protection."). But the lack of literal similarity at the code level does not, as defendant asserts, end the infringement analysis as a matter of law. Courts have found infringement "where the fundamental essence or structure of one work is duplicated in another," <u>id.</u> at 701 (internal citation omitted), because "copyright protection extends beyond a literary work's strictly textual form to its non-literal components." <u>Id.</u> Factually, however, the analysis cannot proceed, because plaintiff has not addressed whether any of its program's "non-literal" features have been infringed, or whether the "fundamental essence or structure" of its program survives in defendant's program. Although written in a different language, that program is, like plaintiff's, a set of instructions creating the same screen displays as plaintiff's program. Defendant's claim of innocent reverse engineering, in the face of the access its staff had to plaintiff's code and the inferences of copying to which that access may give

2

rise, see Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003); Merit Diamond

Corp.v. Frederick Goldman, Inc., 376 F. Supp. 2d 517, 523 (S.D.N.Y. 2005), cannot be fully

resolved on this record. See Computer Assocs., 982 F.2d at 708 (true reverse engineering

involves programmers "working independently").

With respect to plaintiff's claim of screen-display infringement, defendant's line of

"menu command hierarchy" cases do not foreclose as a matter of law the possibility that features

of plaintiff's screen displays are copyrightable. See Lotus Dev.Corp. v. Borland Int'l, Inc., 49

F.3d 807, 814, 815-16 (1st Cir. 1995), aff'd, 516 U.S. 233, reh'g denied, 616 U.S. 1167 (1996)

(distinguishing menu command hierarchy from screen displays in three separate passages); Mfrs.

Techs., Inc. v. Cams, Inc., 706 F. Supp. 984, 994 (D. Conn. 1989) ("external" aspects of screen

displays held copyrightable); Jamison Bus. Sys., Inc. v. Unique Software Support Corp., No. 02

CV 4887 (ETB), 2005 WL 1262095, at*10 n.3 (E.D.N.Y. May 26, 2005) (distinguishing screen

displays from menu command hierarchies, noting that Lotus, like other courts, "left open the

possibility that elements of screen displays may constitute protectable original expression").[1]

The Court is likewise not persuaded that plaintiff's screen displays are materially

indistinguishable as a matter of law from the *purely functional* menu commands found to be

uncopyrightable "methods of operation" in these decisions, although plaintiff has failed to

address the distinction with any factual specificity.

Defendant's underlying theme, based in part on language in the Lotus line of decisions

but also on the doctrines of merger and necessary expression, is that extrinsic considerations

---

[1]Nonetheless, defendant insisted in its brief and at oral argument that "the First Circuit's
Lotus decision . . . became the first seminal case dealing with screen displays." Tr. 7.

(principally, the TLC's parameters and the screen's dimensions) so circumscribed the range of design choices that there was only one, or a very limited number of ways, that the screen could have been designed, and so that design choice is not creative expression to which copyright protection extends. See, e.g., Computer Assocs., 982 F.2d at 708 ("Copyrighted language may be copied without infringing when there is but a limited number of ways to express a given idea."). Although the Court "need not determine how many expressions would be too many" to bar copyright protection, NYMEX, Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 117 n.9 (2d Cir. 2007), the record does not enable the Court to make even basic findings on this question. The record establishes that plaintiff's was not the only design to purport to satisfy the TLC parameters,[2] but plaintiff has not detailed the range of possibilities permissible under the TLC parameters and how unique, or not, its design is.

The briefing and factual record are also devoid of attention to the Second Circuit's remarks in Computer Associates which, although pre-dating Circular 61, suggest that screen displays might be more appropriately addressed, for copyright purposes, as categorically distinct "audiovisual works." 982 F.2d at 703. See also 2-45 Nimmer on Copyright §2.04[A] (2007) (rights under a copyright may differ depending on whether work is literary or audiovisual). Indeed, in the earlier authority to which the Court in Computer Associates cites, the risk that a skilled programmer could do what defendant claims its staff did here— reverse engineer their way to what they see on someone else's screen—becomes the rationale for extending copyright

---

[2] For example, defendant's senior project manager admits that "what [plaintiff] provided was not unique and [defendant] could have used other menu commands and user interface structures, and /or content, to satisfy the TLC contract obligations." Featherling Aff., ¶5   In addition, defendant was not the only vendor to win a contract with the TLC, and even the designs of vendors entering the initial competition would have purported to satisfy the TLC parameters.

protection to the display.  See Stern Elecs. v. Kaufman, 669 F.2d 852, 855 (2d Cir. 1982).[3]

Finally, both parties also failed to address whether the screen displays are copyrightable as compilations (as defined in the Copyright Act, 17 U.S.C.§101), a surprising omission given that the nature of plaintiff's general assertions of creativity appear to lend themselves to compilation analysis, see Lipschutz-Villa Reply Decl. ¶¶4-9, and given that the minimal creativity requirement for copyright protection was established in the compilation jurisprudence of Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991) and its progeny. See, e.g., Merit Diamond, 376 F. Supp. 2d at 522 (jewelry pendant designs copyrightable, although each element was contained in earlier jewel design, because the way plaintiff "recast and arranged those constituent elements" was sufficiently original); Maddog Software, Inc. v. Sklader, 382 F. Supp. 2d 268, 276 (D.N.H. 2005) (program copyrightable although programmer "built" or "compiled" it by selecting from pre-existing forms, buttons and fields, because the selection "transcended the obvious and imbued the program with at least the minimal degree of creativity necessary for copyright protection of the work as a whole," distinguishing Lotus).  See also Mfrs.Techs., 706 F. Supp. at 995 (screen displays treated as compilations).

Irreparable harm has not been established on this record.  Plaintiff's assertion that irreparable harm should be presumed fails in light of the Court's assessment of the merits of the infringement claims.  Plaintiff otherwise makes only general assertions of the immeasurability of damages that fail to address the traditional equitable considerations governing a request for injunctive relief.  See eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

_____

[3] The Tenth Circuit, in a footnote, endorsed the Second Circuit's view that screen displays are audiovisual works.  Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1545 n. 26 (11th Cir. 1996).

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for a preliminary injunction is denied.

SO ORDERED.

Dated: Brooklyn, New York
June 19 2008

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge